(72 Misc. Rep. 446.)

PEOPLE ex rel. WILLIAMS v. WARD, Com'r of Public Works.

(Supreme Court, Special Term, Erie County.   February Term, 1911.)

1. MUNICIPAL CORPORATIONS (§ 218*)—REMOVAL OF EMPLOYÉ—RESTRICTIONS OF CIVIL SERVICE LAW—DISCHARGED SOLDIERS.

Under Civil Service Law (Consol. Laws 1909, c. 7) § 22, which provides that no honorably discharged veteran of the Civil War shall be removed except after a hearing, where relator, a veteran, after being injured while in defendant's employ and carried on its pay roll as a disabled employé, though performing no services, had his salary discontinued, and afterwards upon request was restored to the pay roll for six months and upon signing a release of all causes of action and before the expiration of such a period, and, when he had recovered so as to perform the duties incident to the office, his application to be put back in his position was refused, there was no legal removal.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 591; Dec. Dig. § 218.*]

2. MUNICIPAL CORPORATIONS (§ 218*)—EMPLOYÉS—RESIGNATION.

A relator who held the position of watchman in defendant's employ was injured and retained on the pay roll for a time, though performing no services, and, after his pay had been discontinued, was restored to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the pay roll for six months upon signing a release to defendant of all causes of action for injuries upon defendant's representation that it did not affect his right to his position. *Held*, that such release was not in effect a resignation of his position.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 218.*]

3. ESTOPPEL (§ 67*)—GROUNDS—CLAIM UNDER RELEASE.

Where a city employé signed a release of all causes of action particularly by reason of personal injuries received while in its employ on the representations of the city that it did not affect his right to his position, the city, if it insists on the effect of the release, is estopped from repudiating the only consideration supporting it.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 163, 164; Dec. Dig. § 67.*]

4. MANDAMUS (§ 76*)—ACTS OF PUBLIC OFFICERS—REMOVAL OF PUBLIC OFFICER OR EMPLOYÉ.

Mandamus will lie against a city's commissioner of public works to compel him to restore an employé to a position to which his right has not been legally terminated:

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 158–160; Dec. Dig. § 76.*]

Action by the People, on the relation of George H. Williams, for a peremptory writ of mandamus after the trial of issues against Francis G. Ward, as commissioner of public works of the city of Buffalo. Writ of peremptory mandamus granted.

Hubert C. Minard, for relator.
William S. Rann, for defendant.

WHEELER, J. The relator asks for a peremptory writ of mandamus, after the trial of issues, directing the defendant to restore him to the position of watchman, which he formerly filled, in the department of public works of the city of Buffalo.

The relator is an honorably discharged veteran of the Civil War. The position of watchman is classified as a competitive one under the rules and regulations of the civil service governing the city of Buffalo. The relator passed a competitive examination for the place and received a regular appointment thereto in December, 1901. He continued to fill this position and perform his duties until the 7th day of February, 1908, when he was so seriously injured in the performance of his duties by falling into an unguarded trap door in the office of the reservoir, that he was unable to perform the duties of his position, and continued so disabled until the 14th of March, 1910. He gave notice, however, to the defendant that he would return to his position when well. The superintendent of public works continued to carry the name of the relator on the pay roll of his department, and to pay him his salary, until August 1909. This action was doubtless due to the fact that the relator had received his injuries while in the discharge of his duties in the city service, and in accordance with a practice which seems to have obtained of continuing the compensation of sick and injured employés. On August 7, 1909, however, the superintendent discontinued the payment of relator's salary. This action by the defendant appears to have been taken

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

without complying in any manner with the requirements of section 22 of the civil service law, providing that no honorably discharged veteran of the Civil War shall be removed, "except after a hearing upon due notice upon stated charges."

It appears that at this time there was pending before the common council of the city a claim filed by the relator for compensation for the personal injuries received by him in the accident referred to. The matter came before a committee of the council, and, the situation having been disclosed to them, the committee reported a resolution reciting the circumstances of the injury, and that it was represented that the relator had failed to bring an action against the city within the time prescribed by law because he understood he was to remain on the pay roll in the department of public works as an injured employé. The committee therefore recommended that the commissioner of public works be requested to place the relator's name upon the pay roll of the department for a period of six months beginning December 1, 1909, at the same rate of wages which he was receiving prior to his accident. The recommendation of the committee was adopted by the common council and approved by the mayor, and the commissioner of public works did thereafter restore the relator's name to the pay rolls as a sick and injured employé. It appears, however, that before doing so the relator was required to sign and execute a formal release, releasing the city from all and every cause or causes of action in law or equity which he had against the city, and particularly "by reason of personal injuries received on the 7th day of February, 1908, because of falling through a trap door opening at the reservoir." By March, 1910, before the expiration of the six months mentioned in the resolution passed by the common council, the relator had sufficiently recovered to be able to resume his duties, and applied to the defendant to be put back to work. The defendant then informed him, for the first time, that he would not be allowed to return to his position.

The relator thereafter instituted this proceeding to compel the defendant to restore him to his former position. An alternative writ was granted, and certain issues were framed to be tried before a jury. That trial has been had, and the jury made and returned certain findings of fact submitted to them. Their answers to the questions submitted to them are as follows:

"(1) Was the relator so injured as to disable him from performing the duties and services incident to his employment? A. Yes.

"(2) Did he inform the respondent within a reasonable time of his disability and of his intention to return to work when he was able? A. Yes.

"(3) Did he continue to be disabled until March, 1910? A. Yes.

"(4) Was he able to perform the duties and services incident to his employment at the time he applied to the respondent to be put back to work? A. Yes.

"(5) Did the relator abandon his employment by the city? A. No.

"(6) Did the relator refrain from bringing suit for damages for his injuries pursuant to an agreement with the respondent that he should be continued as an employé of the city until he was able to return to work? A. Yes.

"(7) Was the relator in the employ of the city until August 7, 1909? A. Yes.

"(8) Was the relator in the employ of the city after his name was restored to the pay roll, and until he applied to the respondent to be put back to work? A. Yes.

"(9) Did the relator sign the release relying upon the representation of the city that it did not affect his right to his position? A. Yes."

[1] Upon these findings and the proceedings had, the relator now asks for a peremptory writ of mandamus as originally prayed for in his petition.

The defendant contends that the release which the relator signed, and above referred to, constitutes a complete bar to this proceeding, and operated not only as a release of any claim for damages for personal injuries, but, as well, as a release of his right to the position to which he seeks reinstatement. In this contention the court cannot concur. The relation of employé or appointee between the relator and the city was never legally terminated. The commissioner of public works could only remove relator from his position in the manner prescribed by section 22 of the civil service law, after formal charges and a hearing. There is no pretense that these steps were ever taken. Dropping the relator from the rolls would not accomplish the result. So far as the action of the commissioner of public works is concerned, nothing would or could operate as a removal, save a substantial compliance with the statute.

[2] The relator, on the other hand, might resign. He could terminate his relations and rights to the position by his voluntary resignation. I understand it is the contention of the defendant that the formal release signed was in effect and in law a resignation of his position. Such certainly was not his intention, for the jury have specifically found that the relator signed the release in question, "relying upon the representation of the city that it did not affect his right to his position." He never formally resigned. The city and the commissioner of public works continued to recognize him as in the employ of the city by placing him on the pay rolls, and paying his compensation like other employés and appointees. We cannot see by what authority the city authorities would have had any right to have paid out public moneys, except on the theory that the relator continued to be an employé of the city, and entitled to the position for which he was paid. Such is the only logical interpretation of their acts. Such, too, is the express finding of the jury, that he was in "the employ of the city after his name was restored to the pay roll, and until he applied to the respondent to be put back to work." When restored to the pay roll in December, 1909, he was in the city employ, and section 22 protected the relator from arbitrary removal just as much then as it did prior to that time. It is true the resolution of the common council requested the commissioner to put the relator on the rolls for six months. It was, at most, a request. It had no binding force and effect on the relator. The common council neither had any power of appointment or power of removal. So far as the resolution is concerned, it had no more legal effect than though the request had come from some citizen prompted by sentiments of good will toward the relator. But, if the resolution had any legal or binding effect, it should be interpreted in the light of the circum-

stances of the case. The relator at that time was sick and disabled from injuries received in the discharge of his duties. Whether he would ever be able to resume those duties was uncertain, and so, we take it, the resolution was simply tantamount to a request to the commissioner of public works that, whether the relator was able to perform his duties or not, he should be nevertheless continued on the pay roll of the department for at least six months. There was nothing in terms limiting his employment to six months' time, in case he was able before the expiration of that time to resume the duties of his position.

If we look to the release itself, we find nothing in it either expressly or inferentially releasing the relator's claim or right to the position itself. He may, and probably did, release his right to demand pay from August 1, 1909, to December 1, 1909, but that is as far as the release can fairly be said to go, except to also and particularly release the claim for personal injuries received in the accident.

[3, 4] There is still another, and we think a most conclusive argument against the contention of respondent's counsel. The consideration for the release, if any existed, was the assurance and agreement that the relator should be continued on the pay roll of the department, and technically in the employ of the city. Can it be contended that the city or any one else had the right to insist on the release, and at the same time repudiate the only consideration supporting the release? Surely such a position cannot be sustained.

The position to which the relator was appointed has not been filled by any other permanent appointment. The present occupant is only filling the position as a temporary appointee.

We are clearly of the opinion that the relator is entitled to the writ asked, with costs of the proceeding. So ordered.